1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*E-FILED - 7/29/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| MICHAEL TRIPPE, | ) | No. C 10-3409 RMW (PR) |
|---|---|---|
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | DEFENDANTS' MOTION TO |
| v. | ) | DISMISS; GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| W. KEEVIL, et al., | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiff, a state prisoner proceeding pro se, filed a civil complaint in state court.  On August 3, 2010, defendants noticed removal to federal court as the complaint alleged both federal and state claims.  Defendants move to dismiss plaintiff's complaint for failure to exhaust. Defendants also move for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to the judgment as a matter of law.  Plaintiff has opposed both motions, and defendants have filed a reply.[1]  Having carefully considered the papers submitted, the court hereby GRANTS defendants' motion to dismiss and GRANTS defendants' motion for summary judgment, for the reasons set out below.

///

///

---

[1] Defendants' and Plaintiff's requests for judicial notice are GRANTED.

1

### BACKGROUND[2]

2    At the time of these events, plaintiff was an inmate at Pelican Bay State Prison ("PBSP").

3    (Decl. Jacquez at ¶ 7.)  He was housed in the Secured Housing Unit ("SHU"), and was a

4    validated associate of the Aryan Brotherhood.  (Id.)  On September 19, 2008, the Institutional

5    Gang Investigations ("IGI") gave him a general chrono identifying him as having communicated

6    with non-inmate, "Cheri Clement."  (Id. at ¶ 3; Docket No. 13, Att. A ("Statement of Facts") at

7    1.)  The chrono indicated that Cheri Clement had been banned from having contact with any

8    PBSP inmate, and that if any inmate tried to contact her, he may be subject to disciplinary

9    procedures.  (Docket No. 13, Ex. B at 5.)  Plaintiff filed an inmate appeal, and, on November 5,

10   2008, at the second level of review, plaintiff's appeal was granted.  (Statement of Facts at 1.)

11   The appeal response stated that plaintiff had been falsely identified, and the chrono was

12   subsequently removed from his central file.  (Docket No. 13, Ex. B at 6; Decl. Jacquez at ¶ 5.)

13   On December 11, 2008, plaintiff applied for and was granted "inmate legal assistance"

14   from Inmate Frank Clement ("Clement"), Cheri Clement's husband.  (Statement of Facts at 1.)

15   Clement was also a validated associate of the Aryan Brotherhood, and also housed at PBSP's

16   SHU.  (Decl. Jacquez at ¶ 8.)  Plaintiff requested assistance for the purpose of aiding him in

17   preparing a state habeas petition to challenge the "denial of correspondence," (Statement of

18   Facts, Ex. A at 18.)  Plaintiff intended to litigate about the false identification of corresponding

19   with Cheri Clement.  (Statement of Facts at 1.)  On December 16, 2008, and December 22, 2008,

20   plaintiff attempted to forward the November 5, 2008 document granting his appeal to Clement to

21   help Clement prepare plaintiff's habeas petition.  (Id. at 2.)  On December 17, 2008, and

22   December 24, 2008, Defendant Keevil, a library technician assistant working at PBSP's SHU

23   law library (Decl. Keevil at ¶ 2), returned plaintiff's requests and document, explaining that the

24   SHU law library had strict limitations regarding "legal passing."  (Statement of Facts, Ex. A at

25   19, 22.)  Specifically, Keevil explained to plaintiff that, pursuant to SHU law library regulation,

26

27

28

---

[2]  The following facts are undisputed.

1   Operational Procedure 822 H.2(e)[3] allowed inmates to pass six handwritten pages, and that the

2   proper procedure for passing printed materials was a one-time passing request that was routed

3   through a correctional counselor.  (Decl. Keevil at ¶¶ 3-4.)

4       On January 2, 2009, plaintiff was in the SHU law library, and Clement was there as well.

5   (Statement of Facts at 4.)  Plaintiff attempted to ask Clement legal questions.  (Id.)  As a result,

6   plaintiff and Clement were removed from the law library for a violation of the "no talking"

7   policy and plaintiff's law library access was suspended for thirty days.  (Id. and Ex. C.)

8       On January 6, 2009, plaintiff filed an inmate appeal, D-09-00050, complaining that he

9   was prohibited from passing a copy of an inmate appeal grant to Clement, and alleging that the

10  PBSP policy limiting the documents that are permitted to be passed between inmates denied him

11  legal assistance.  (Id., Ex. A at 1, 3-4.)  On February 9, 2009, the first level appeal response

12  denied plaintiff's appeal, concluding that the document plaintiff attempted to pass to Clement

13  was not approved under the Department Operations Manual ("DOM") pursuant to the rules

14  governing the SHU law library.  (Id. Ex. A at 5.)  On April 7, 2009, the second level appeal

15  response denied plaintiff's appeal, concluding that the PBSP DOM regulations specifically

16  addressed the procedures governing the SHU law library, and all library services.  (Id., Ex. A at

17  9.)  The response indicated that the document plaintiff attempted to pass was not approved under

18  the PBSP DOM, and that the library staff complied with PBSP procedures.  (Id.)  Plaintiff filed

19  an appeal to the Director's level of review challenging his inability to pass certain documents to

20  his legal assistance inmate, as well as PBSP's restrictions on documents permitted to pass

21  between inmates.  (Id., Ex. A at 10-14.)  The appeal at the Director's level of review was denied.

22  (Id., Ex. A at 15-16.)

23                                    **DISCUSSION**

24      In his federal complaint, plaintiff alleges that PBSP's policy limiting the documents to be

25  passed for legal assistance, PBSP's "no talking" policy, and the cumulative effect of both

26  policies hindered his ability to pursue a state habeas action.  Defendants argue that (1) the

27

28      [3] Operational Procedure 822 was later replaced by the Department Operations Manual
    Supplement Section 101120.10(E).  (Decl. Jacquez at ¶ 6.)

1  complaint should be dismissed because plaintiff's "no-talking" claim is unexhausted; (2) they are

2  entitled to summary judgment; (3) defendants are entitled to qualified immunity; and (4)

3  plaintiff's state claims fail.  The court addresses each of defendants' arguments in turn.

4  A.    Motion to Dismiss

5        1.    Standard of Review

6        The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

7  with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

8  prisoner confined in any jail, prison, or other correctional facility until such administrative

9  remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Nonexhaustion under

10 § 1997e(a) is an affirmative defense; that is, defendants have the burden of raising and proving

11 the absence of exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding

12 a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the

13 pleadings and decide disputed issues of fact.[4]  Id. at 1119-20.  If the court concludes that the

14 prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without

15 prejudice.  Id. at 1120.

16       The State of California provides its prisoners and parolees the right to appeal

17 administratively "any departmental decision, action, condition or policy perceived by those

18 individuals as adversely affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In order

19 to exhaust available administrative remedies within this system, a prisoner must proceed through

20 several levels of appeal: (1) informal review, (2) first formal written appeal on a CDC 602

21 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third

22 level appeal to the Director of the California Department of Corrections and Rehabilitation

23 ("Director").  See Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code

24 Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

25 exhaustion requirement under § 1997e(a).  See Barry, 985 F. Supp. at 1237-38.

26

27       [4]  If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss
   for failure to exhaust -- a procedure closely analogous to summary judgment -- the court must
28 give the prisoner fair notice of his opportunity to develop a record.  Wyatt, 315 F.3d at 1120
   n.14.  Plaintiff was given such notice in the October 5, 2010 order in this matter.

1      Defendants have the burden of raising and proving the absence of exhaustion, and

2  inmates are not required to specifically plead or demonstrate exhaustion in their complaints.

3  Jones v. Bock, 549 U.S. 199, 215-17 (2007).  As there can be no absence of exhaustion unless

4  some relief remains available, a movant claiming lack of exhaustion must demonstrate that

5  pertinent relief remained available, whether at unexhausted levels or through awaiting the results

6  of the relief already granted as a result of that process.  Brown v. Valoff, 422 F.3d 926, 936-37

7  (9th Cir. 2005).

8      2.   Analysis

9      Defendants argue, and plaintiff concedes (Opp. at 9), that he never exhausted his claim

10  that the "no talking" policy hindered his ability to access the courts, or that the policy, in

11  conjunction with the policy on acceptable passing of documents hindered his ability to access the

12  courts.  Thus, having considered the arguments and evidence submitted by the parties in support

13  of and opposition to the motion to dismiss, the court finds that plaintiff did not provide PBSP

14  prison officials with sufficient information to put them on notice that in addition to plaintiff's

15  claim that the policy on passing documents to legal assistance inmates denied him access to the

16  courts, PBSP's policy on "no talking" in the SHU law library independently or conjunctively

17  denied his access to the courts.  Consequently, the only exhausted claim presented in this federal

18  complaint concerns PBSP's policy on document passing for legal assistance.

19      Defendants contend that the proper remedy is dismissal of the entire complaint because

20  the claims are intertwined.  (Reply at 2-3.)  The PLRA does not require dismissal of the entire

21  complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the

22  complaint.  Jones v. Bock, 549 U.S. 199, 222-24 (2007) (rejecting "total exhaustion-dismissal"

23  rule); Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005).  The proper treatment of a mixed

24  complaint, i.e., a complaint with both exhausted and unexhausted claims, as here, depends on the

25  relatedness of the claims.  Id. at 1175.  "When a plaintiff has filed a "mixed" complaint and

26  wishes to proceed with only the exhausted claims, a district court should simply dismiss the

27  unexhausted claims when the unexhausted claims are not intertwined with the properly

28  exhausted claims."  Id.  In contrast, "when a plaintiff's mixed complaint includes exhausted and

1   unexhausted claims that are closely related and difficult to untangle, dismissal of the defective

2   complaint with leave to amend to allege only fully exhausted claims, is the proper approach."

3   Id. at 1176.  Here, while plaintiff's claims are intertwined, they are not difficult to untangle.

4   Plaintiff's claims challenge separate policies and he asserts that each one violated his

5   constitutional right to access to the courts.  Accordingly, it is not necessary to dismiss the entire

6   complaint with leave amend.  Instead, the court GRANTS IN PART defendants' motion to

7   dismiss, and dismisses without prejudice plaintiff's claim concerning the "no talking" policy.

8   B.       Motion for Summary Judgment

9            1.       Standard of Review

10          Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

11  that there is "no genuine issue as to any material fact and that the moving party is entitled to

12  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

13  the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

14  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

15  verdict for the nonmoving party.  Id.

16          The party moving for summary judgment bears the initial burden of identifying those

17  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

18  issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving

19  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

20  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

21  opposing party will have the burden of proof at trial, as is the case here, the moving party need

22  only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

23  at 325.

24          Once the moving party meets its initial burden, the nonmoving party must go beyond the

25  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

26  genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

27  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

28  Liberty Lobby, Inc., 477 U.S. at 248 (1986.  It is not the task of the court to scour the record in

1 | search of a genuine issue of triable fact. <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996).

2 | The nonmoving party has the burden of identifying, with reasonable particularity, the evidence

3 | that precludes summary judgment. <u>Id.</u> If the nonmoving party fails to make this showing, "the

4 | moving party is entitled to judgment as a matter of law." <u>Celotex Corp</u>, 477 U.S. at 323.

5 |       At the summary judgment stage, the court  must view the evidence in the light most

6 | favorable to the nonmoving party: if evidence produced by the moving party conflicts with

7 | evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

8 | forth by the nonmoving party with respect to that fact. <u>See Leslie v. Grupo ICA</u>, 198 F.3d 1152,

9 | 1158 (9th Cir. 1999).

10 |       2.   <u>Analysis</u>

11 |       Plaintiff claims that PBSP's SHU policy on document passing, as implemented by

12 | Defendant Jacquez, violated his constitutional right to access the courts.  He further alleges that

13 | Defendant Keevil violated that right by refusing to forward copies of his inmate appeal to Inmate

14 | Clement, plaintiff's assigned and approved legal assistant.  Finally, plaintiff argues that this

15 | prohibition denied him constitutionally adequate assistance from Clement.

16 |       Prisoners have a constitutional right of access to the courts.  <u>See Lewis v. Casey</u>, 518

17 | U.S. 343, 350 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  In <u>Sands v. Lewis</u>, 886 F.2d

18 | 1166 (1989), the Ninth Circuit divided such cases into two categories: (1) Those which assert

19 | inadequate law libraries or alternative sources of legal knowledge sufficient to prepare a suit, and

20 | (2) all others. <u>Id.</u> at 1171.  As to the second category, the court required proof of "actual injury"

21 | to state a claim. <u>Id.</u>  The court did not require actual injury for the first category, <u>id.</u>, but that

22 | part of the holding was overruled by <u>Lewis</u>, 518 U.S. at 350-55 (1996).  In short, whether a

23 | prisoner's claim is that a prison law library is inadequate or is that official action somehow

24 | blocked his access to the court, he must allege "actual injury." <u>See id.</u>  To prove an actual

25 | injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to

26 | pursue a non-frivolous claim concerning his conviction or conditions of confinement. <u>See id.</u> at

27 | 354-55.  Once the prisoner establishes a denial of access to the courts, the court should then

28 | determine whether the hindrance of the prisoner's access to court was reasonably related to

1  legitimate penological interests.  See id. at 361 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

2  If the hindrance passes the Turner test, the denial of access to the courts claim will fail even if

3  there was actual injury.

4      Here, plaintiff argues that he was attempting to pursue a non-frivolous claim.

5  Specifically, he alleges that he intended to file a habeas claim regarding the inadequate

6  investigations by members of the IGI at PBSP, which "routinely" resulted in false information

7  being placed into validated inmates files at PBSP.  (Opp at 12.)  The intended litigation centered

8  around "faulty investigation techniques that the gang unit employs."[5]  (Opp. at 13.)  Taken as

9  true, this appears to state a non-frivolous claim.

10      Regardless of the conflicting assertions of plaintiff as to what he intended to litigate,

11  plaintiff fails to demonstrate that he suffered an "actual injury" that was caused by PBSP's legal

12  assistance program, and specifically, by the policy on document passing.  That is to say, plaintiff

13  failed to present facts to support his assertion that his inability to pass to Clement copies of his

14  inmate appeal, D-08-02731, and related 128B chrono, hindered his efforts to pursue state habeas

15  relief.  Examples of impermissible hindrances include: a prisoner whose complaint "was

16  dismissed for failure to satisfy some technical requirement which, because of deficiencies in the

17  prison's legal assistance facilities, he could not have known[;]" and a prisoner who had "suffered

18  arguably actionable harm that he wished to bring before the courts, but was so stymied by

19  inadequacies of the law library that he was unable even to file a complaint."  Lewis, 518 U.S. at

20  351; see, e.g., Hebbe v. Pliler, 627 F.3d 338, 343 (9th Cir. 2010) (plaintiff demonstrated that

21  denying him law library access while on lockdown resulted in "actual injury" because he was

---

23      [5]  The court notes that plaintiff has previously asserted that his intended litigation was
24  about "denial of correspondence" rather than "faulty investigation techniques." Specifically,
    plaintiff's July 14, 2009 complaint to the California Victim Compensation and Government
25  Claims Board avers that Clement was to assist him with "potential litigation to Del Norte
    Superior Court for denial of correspondence," and that the "intended litigation resulted from a
26  chrono plaintiff received on 9-19-08 from Institutional Gang Investigations which falsly [sic]
    identified him as corresponding with Clement's wife . . ."  (Defs.' Request for Judicial Notice at
27  AGO 007.)  In addition, in plaintiff's request for legal assistance, he indicated that he needed
    assistance with "potential litigation" regarding "denial of correspondence."  (Statement of Facts,
28  Ex. A at 18.)

1  prevented from appealing his conviction); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004)

2  (agreeing with district court that prisoner "did not allege injury, such as inability to file a

3  complaint or defend against a charge, stemming from the restrictions on his access to the law

4  library"). In addition, mere delay in filing papers would not be enough, for example, if they

5  were nevertheless timely filed or accepted and considered by the court. See Hudson v.

6  Robinson, 678 F.2d 462, 466 (3d Cir. 1982).

7        Here, plaintiff does not allege that his petition was rejected for filing, or that anything

8  adverse occurred in his attempt to file a habeas petition as a result of Clement not receiving these

9  particular documents. In fact, not only does plaintiff fail to allege that he even attempted to file a

10  habeas petition, but there is no indication that plaintiff has yet lost the opportunity to file such a

11  habeas petition concerning his intended claim. Notably absent is any explanation connecting

12  Clement's failure to receive copies of the inmate appeal with any frustrated efforts in initiating a

13  habeas action. Based on these undisputed facts, plaintiff has not demonstrated that he suffered

14  an "actual injury." See Lewis, 518 U.S. at 354-55. Thus, there is no genuine issue of material

15  fact sufficient to allow a reasonably jury to determine that plaintiff was hindered from accessing

16  the courts.

17        Alternatively, even assuming that plaintiff has demonstrated a hindrance to his access to

18  the courts, the restriction on document passing is "reasonably related to legitimate penological

19  interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Under the Turner analysis, a court must

20  consider four factors when determining if a restriction that infringes on a prisoner's rights is

21  reasonably related to legitimate penological interests: (1) whether the restriction has a logical

22  connection to legitimate governmental interests; (2) "whether there are alternative means of

23  exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the

24  asserted constitutional right will have on guards and other inmates, and on the allocation of

25  prison resources generally"; and (4) the "absence of ready alternatives," or, in other words,

26  whether the rule at issue is an "'exaggerated response' to prison concerns." Id. at 89–90

27  (internal quotation marks and citations omitted). Where prison rules or regulations impede the

28  exercise of a prisoner's constitutional rights, federal courts must discharge their duty to protect

1  those rights.  See id.  However, courts must be aware that they are "ill equipped to deal with the

2  increasingly urgent problems of prison administration and reform."  Id. (citation and internal

3  quotation marks omitted).  Where the regulations of a state prison are involved, "federal courts

4  have . . . additional reason to accord deference to the appropriate prison authorities."  Id. at 85

5  (citation and internal quotation marks omitted).

6              a.      Rational relationship

7          DOM Supplement Section 101120.10(E), entitled "Legal Assistance," for PBSP SHU

8  inmates limits the frequency and method of communication for the purpose of legal assistance

9  between two inmates.  (Decl. Jacquez, Ex. A at 11.)  The subsection specifically provides:

10              Legal assistance between two inmates will be provided by
                permitting them to submit a total of six handwritten pages of
11              questions and answers dealing only with the case for which the
                assistance has been approved (e.g., research materials; inquiries as
12              to the type of document needed and proper completion of same;
                case cites), or the one topic that was approved.  Questions and
13              answers may be submitted once a week.  Failure to comply with
                the above procedures and regulations will be documented and may
14              result in restriction from the Legal Assistance Program.

15  (Id.)

16          In considering, under the first prong of the Turner test, whether there is a rational

17  connection between a challenged policy and a legitimate governmental interest, a court must

18  determine "whether the governmental objective underlying the policy is (1) legitimate,

19  (2) neutral, and (3) whether the policy is rationally related to that objective."  Mauro v. Arpaio,

20  188 F.3d 1054, 1059 (9th Cir. 1999) (en banc) (internal quotation marks and citation omitted).

21          Here, Plaintiff does not dispute that there is a rational connection between the policy and

22  a legitimate governmental interest.  Maintaining institutional security is certainly a legitimate

23  governmental interest.  See Thornburgh v. Abbott, 490 U.S. 401, 415 (1989).  Here, DOM

24  Supplement Section 101120.10(E) is intended to maintain the safety and security of the prisons

25  by attempting to limit potential criminal activity among gang members and associates by

26  restricting their communications are legitimate.  (Decl. Jacquez at ¶¶ 10-12.)

27          The policy is neutral.  Regulations restricting inmates First Amendment rights must

28  operate in a neutral fashion, without regard to the content of the expression, and they are

1    considered neutral for purposes of a <u>Turner</u> analysis if prison administrators draw distinctions

2    based solely on their potential implications for prison security.  <u>Thornburgh</u>, 490 U.S. at 415-16.

3    Here, SHU inmates have previously used the SHU law library's document passing procedures to

4    pass coded messages communicating and advancing prison gang activity.  (Decl. Jacquez at ¶

5    13.) Preventing the communication of coded messages is a neutral governmental interest aimed

6    at enhancing prison security and not at the suppression of expression as claimed by plaintiff.  <u>Id.</u>

7         Finally, prison officials' limiting the number of pages and type of writing allows them to

8    review the documents without unnecessarily delaying an inmate's desire to obtain legal

9    assistance.  (<u>Id.</u> at ¶ 21.)  Moreover, printed documents (as opposed to handwritten documents)

10   containing "ghost writing" or coded messages are more difficult to detect.  (<u>Id.</u> at ¶ 22.)  Thus,

11   there is a rational relationship between the restriction on documents passed between SHU

12   inmates to be no more than six handwritten pages and the goal of maintaining prison security.

13                    b.    Alternative Means

14        The second factor to be considered under <u>Turner</u> is whether there exist alternative means

15   of exercising the challenged right that remain open to prisoners.  <u>Mauro</u>, 188 F.3d at 1061.

16   "Where 'other avenues' remain available for the exercise of the asserted right, courts should be

17   particularly conscious of the 'measure of judicial deference owed to correctional officials . . . in

18   gauging the validity of the regulation.'"  <u>Id.</u> (quoting <u>Turner</u>, 482 U.S. at 90.)

19        Plaintiff asserts that DOM Supplement Section 101120.10(E) is essentially a complete

20   ban on his right to legal assistance in reviewing documents and preparing a court filing.  (Opp. at

21   15.)  As defendants argue, plaintiff had ready alternatives to receive legal assistance.  He was not

22   prohibited from passing up to six pages of handwritten communication in which he could have

23   conveyed the information contained within the printed documents he wished to pass.  Prison

24   officials are not required to adopt the least restrictive means of achieving their legitimate

25   objectives.  <u>See</u> <u>Mauro</u>, 188 F.3d at 1060.  The regulation at issue here, which expressly allows

26   inmates to receive legal assistance, provides alternative means for inmates to retain their First

27   Amendment right do so in a way that does not pose a threat to PBSP's legitimate governmental

28   interests.

1

c.      Impact of Accommodation

2       The third Turner factor is a determination of the impact the accommodation of the

3  asserted constitutional right would have on prison personnel, other inmates, and the allocation of

4  prison resources.  Mauro, 188 F.3d at 1061.  As relevant to the instant challenge, the Court must

5  assess the impact of allowing SHU inmates to pass documents between each other without

6  restriction.

7       Allowing SHU inmates unrestricted ability to pass documents would significantly and

8  negatively impact the safety and security of PBSP.  (Decl. Jacquez at ¶ 12.)  Further, it would

9  negatively impact the allocation of resources as the time to review each document would cause

10 delays in the inmate receiving assistance, as well as take away from other necessary prison

11 duties.  (Id. at ¶ 21.)  The unrestricted passing of documents between validated gang members

12 within the SHU would have a significant negative impact on PBSP personnel, other inmates, and

13 the allocation of prison resources.

14

d.      Exaggerated Response

15      The fourth and final Turner factor to be considered is whether the policy is, in effect, an

16 "exaggerated response" to the prison's concerns.  See Mauro, 188 F.3d at 1062.  In that regard,

17 the burden is on the prisoner challenging the regulation, not on prison officials, to show there are

18 obvious, easy alternatives to the regulation.  Id.

19      Plaintiff claims that while SHU inmates can pass printed materials to another inmate, it is

20 done as a one-time passing request, and only after it is determined that the SHU inmate has a

21 current active court case.  (Opp. at 8; Statement of Facts, Ex. A at 22.)  Plaintiff suggests that

22 this one-time passing request could be adapted to be utilized in preparation of litigation rather

23 than only when litigation has already begun.  (Opp. at 8-9, 17.)  Defendants do not address this

24 alternative.  The burden is on plaintiff to demonstrate that the cost of providing this alternative

25 would be "de minimis."  Turner, 482 U.S. at 90-91.  Here, although plaintiff does suggest an

26 alternative method of accommodating his request, he does not provide any evidence or

27 suggestion that this alternative would be at a "de minimis cost to valid penological interests."

28 See id.

1   Plaintiff further claims that there is no reason that inmates like himself, who have not

2   engaged in the type of conduct of which prison officials are concerned, should be subject to such

3   restrictions.  (Opp. at 7.)  Regarding the implication that prison officials should restrict only

4   those prisoners who have attempted to send coded messages or pass documents in an

5   inappropriate manner, the Ninth Circuit has already decided that such an alternative could not be

6   obtained at a "de minimis" cost.  Cf. Frost v. Symington, 197 F.3d 348, 358 (9th Cir. 1999)

7   ("forcing prison officials to wait until after violations have occurred before restricting inmates'

8   access to these materials would unduly tie the hands of prison officials who see the need for

9   preventive measures").

10   As noted, prison officials are not required to adopt the least restrictive means of

11   achieving their legitimate objectives.  See Mauro, 188 F.3d at 1063.  The policy on document

12   passing being restricted to six handwritten pages is not an exaggerated response to prison

13   officials' legitimate penological concerns, in that the regulation limits less obscure attempts to

14   pass coded messages between gang members, while still allowing those inmates to access legal

15   assistance.

16   In sum, for the reasons stated above, the Court concludes that PBSP's SHU document

17   passing policy is reasonably related to legitimate penological interests, see Thornburgh, 490 U.S.

18   at 413, and, accordingly, the regulation does not violate the First Amendment.

19   Because the court has concluded that there is no genuine issue of material fact that the

20   challenged policy is reasonably related to penological interests, plaintiff's related claim that the

21   policy prevented him from receiving legal assistance cannot survive defendants' motion for

22   summary judgment.  See Johnson v. Avery, 393 U.S. 583, 490 (1969) (recognizing that while

23   prisoners may not be barred from receiving legal assistance from other prisoners unless they are

24   provided with a reasonable alternative to such assistance, the state may reasonably regulate the

25   time when, and the place where, prisoner legal assistance is dispensed).

26   Defendants' motion for summary judgment is GRANTED.[6]

27

28   _____

[6] Because the court grants defendants' motion for summary judgment, it is unnecessary
to reach the issue of qualified immunity.

C.    <u>State law claims</u>

Plaintiff's state law claims are dismissed under the authority of 28 U.S.C. § 1367(c)(3). <u>See</u> <u>Ove v. Gwinn</u>, 264 F.3d 817, 826 (9th Cir. 2001) (court may decline to exercise supplemental jurisdiction over related state-law claims under subsection (c)(3) once it has dismissed all claims over which it has original jurisdiction). Plaintiff's state claims are based on the same set of facts as his federal claim, which the court has dismissed above. Accordingly, the court declines to exercise jurisdiction over the remaining state law claims, and will dismiss them without prejudice. <u>See</u> <u>Reynolds v. County of San Diego</u>, 84 F.3d 1162, 1171 (9th Cir. 1996).

**CONCLUSION**

Defendants' motion to dismiss is GRANTED in part. Defendants' motion for summary judgment is GRANTED. Judgment shall be entered in favor of defendants. The clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: ___7/28/11___

RONALD M. WHYTE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


TRIPPE et al,

             Plaintiff,

   v.

KEEVIL et al,

             Defendant.
_____/

Case Number: CV10-03409 RMW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 29, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Michael Trippe
E61614
P.O. Box 7500
Crescent City, CA 95531

Dated: July 29, 2011

                                    Richard W. Wieking, Clerk
                                    By: Jackie Lynn Garcia, Deputy Clerk